JULIO J. RAMOS (SBN 189944)
Attorney at Law
35 Grove Street, Suite 107
San Francisco, California 94102
Telephone:    (415) 948-3015
Facsimile:    (415) 469-9787
ramosfortrustee@yahoo.com

Attorney for Plaintiff
Amy Harrington

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMY HARRINGTON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware Corp., and FISHER-PRICE, INC., a Delaware Corp., and DOES 1 through 100, inclusive,<br><br>Defendants. | CIV. N0. 07-5110 (MJJ)<br><br>**PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND** |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF REMAND

I.

FACTS AND PROCEDURAL HISTORY

This case involves the design, manufacturing, marketing and selling of toys contaminated with lead paint to consumers in the State of California by Mattel Inc.    On August 2, 2007 the United States Consumer Products Safety Commission (CPSC) issued a press release announcing a massive recall of over 900,000 toy products.    The press release specifically identified Mattel Inc. toys from the Dora the Explorer line, as a hazard because[3]  surface paints on the toys could contain excessive levels of lead.    Lead is toxic if ingested by young children and can cause adverse health effects.[4] (CPSC Press Release 8/02/07, attached as Ex. A Decl. of Julio J. Ramos).

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

Plaintiff Amy Harrington is a lifelong long resident of San Francisco and a mother of two girls, ages one and four.    Between May and August 2007, Plaintiff purchased a Dora Talking Pony Palace, for her four year old daughter; that toy was listed in the CSPC press release as containing lead based paint.    The CSPC press release stated that the toys subject to the recall sold for between $5 and $40.    (*Id.*)    Plaintiff's Complaint alleges that her total amount in controversy does not exceed $75,000.00. (Compl. at ¶ 3).

On September 12, 2007 Mattel Inc.'s Chairman and CEO, Mr. Robert Eckert, admitted Mattel's Inc.'s failure to adequately supervise the production of its toy products by testifying to the United States Senate that:

> *As to lead paint on our products, our systems were circumvented, and our standards were violated. We were let down, and so we let you down. On behalf of Mattel and its nearly 30,000 employees, I apologize sincerely. I can't change the past, but I can change the way we do things. And I already have. We are doing everything we can to prevent this from happening again.*
>
> ***
>
> *Some Mattel toys with unacceptable levels of lead paint made it into the marketplace.*

(*See* Testimony of Robert A. Eckert Chairman and CEO of Mattel Inc. submitted to the Senate Committee on Appropriations Subcommittee on Financial Services and General Government dated 9/12/07 attached as Ex. B Decl. of Julio J. Ramos).

On August 20, 2007 Amy Harrington filed a lawsuit in San Francisco Superior Court against Mattel Inc. a Delaware Corporation with its principal place of business in El Segundo California and its wholly owned subsidiary Fisher-Price Inc. for breach of the implied warranty of merchantability and violation of California's Unfair Competition Act §17200.    The case is captioned Harrington v. Mattel, Inc. et. al., CGC-07-466376.

On September 11, 2007 the lawsuit was served on Defendants.    The matter was designated as complex and assigned to the Complex Litigation Department of Judge John E. Munter on September 27, 2007.

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

1   On October 3, 2007 the Defendants' law firm; Jones Day filed a joint answer to the
2   complaint on behalf of both Defendants.

3   On October 4, 2007 the Defendants jointly filed a joint Notice of Removal to the
4   Northern District of California.

5   On October 16, 2007 defendant's counsel in a brief jointly filed before the Judicial Panel
6   on Multidistrict Litigation in MDL. Docket No. 1897 stated that:

7   *Mattel's worldwide product integrity program is likely to be relevant to the various*
8   *claims in these proceedings, and that program is based at Mattel's offices in El Segundo,*
9   *California.    Far fewer documents and witnesses are located at Fisher-Price's*
10  *headquarters in the Western District of New York.*

11  *(See* Defendants Mattel, Inc.'s and Fisher-price Inc.'s Reply In Support of Motion For § 1407
12  Transfer of Actions To The Central District of California attached as Ex. C to the Decl. of Julio J.
13  Ramos).

14  On October 22, 2007 Plaintiff filed a Case Management Conference Statement with
15  Judge Munter apprising him of the status of this matter; Defendant's counsel did not agree to file
16  joint statement on the basis that the matter was removed to Federal Court.

17                                                    II.

18  DEFENDANTS HAVE FAILED TO CARRY THE BURDEN OF DEMONSTRATING
19     REMOVAL JURISDICTIONAL UNDER THE CLASS ACTION FAIRNESS ACT

20  In determining whether removal jurisdiction exists, the Court should look to the
21  allegations of plaintiff's complaint and accept the allegations as true.    *Steel Valley Auth. v.*
22  *Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3rd Cir. 1987).    The party seeking removal
23  bears the burden of establishing, by a preponderance of the evidence, facts demonstrating that the
24  case meets the minimum jurisdictional requirements.    *Guglielmino v. Mckee Foods Corp.,* 2007
25  WL 2916193 (9th Cir. 2007) (defendant has a preponderance of the evidence burden of proof
26  when complaint alleges damages less than the jurisdictional threshold but does not specify a total
27  amount in controversy).    The text of the Class Action Fairness Act (CAFA) creates no new

28
                                                      3

1   presumption favoring removal jurisdiction or relieves a defendant of its

2   burden of persuasion in that regard.   *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th

3   Cir.2006); *Rodgers v. Central Locating Service, Ltd.*, 412 F.Supp. 1171 (W.D. Wash. 2006).

4         Removal must be strictly construed with the burden of establishing such jurisdiction in the

5   federal courts falling squarely on the defendants.   *Wilson v Republic Iron & Steel Co.*, 257 U.S.

6   92, 97-98 (1921); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Harris v. Provident*

7   *Life and Acc. Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994); *Steel Valley Auth. v. Union Switch and*

8   *Signal Div.*, 809 F.2d 1006, 1010 (3rd Cir. 1987); *Crazy Eddie, Inc. v. Cotter*, 666 F.Supp. 503,

9   508 (S.D.N.Y. 1987).   Any doubt about the jurisdiction of this Court must be resolved in favor

10  of remand.   *Steel Valley Auth.*, *supra.*, at p. 1010 ("It is settled that the removal statutes are to

11  be strictly construed against removal and all doubts should be resolved in favor of remand.")

12        Without much evidentiary support, the Defendants essentially argue in their Notice of

13  Removal, that removal is appropriate because the aggregated amount in controversy will exceed

14  $5 million in this case.   That argument, standing alone, fails to meet the burden with respect to

15  establishing by a preponderance of the evidence that the Plaintiff's claims will be in excess of

16  CAFA's total aggregate amount in controversy requirement of $5 million.

17        First, with respect to the aggregated amount in controversy, Defendants place great

18  reliance upon the assertion without any factual basis whatsoever, that the medical monitoring

19  sought by the Plaintiff will cost $250 per person. (Def. Notice at p. 6 ¶ 13).   Defendants also

20  contend that approximately 29,000 toys are subject to recall in California and on that basis alone

21  they construct a calculation consisting of 29,000 multiplied by $250.00 = $7,250,000 in medical

22  monitoring costs.   *Id.*   That is not evidence.   Defendant's make no other attempt to

23  approximate the actual costs associated with lead poisoning monitoring.   "Under CAFA the

24  burden of establishing removal jurisdiction remains, as before, on the proponent of federal

25  jurisdiction."   *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir.2006) (*per*

26  *curiam*).

27                                          4

28  _____

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

Plaintiff has identified a 2002 study commissioned by the District Board of Health for Mahoning County Ohio that quantified some of the direct costs to taxpayers to screen and treat children for lead poisoning.     Essentially, the study found that screening and treating 2,777 children at varying levels of lead levels cost a total of about $124,654.   On average that figure resulted in a cost of $45 per child.   Utilizing the Mahoning study as a proxy for this case, and even further utilizing Defendant's 29,000 potential claimants, it can be reasonably estimated that the aggregated cost for medical monitoring in California would be closer to $1,305,000 rather than the figure of almost $8 million that Defendants materialize from thin air.   (*See Public Health Reports, May-June 2005, Vol. 120* attached as Ex. D Decl. of Julio J. Ramos.)   The provisions of the Class Action Fairness Act are to be strictly construed so as to limit the jurisdiction of the Federal Courts.   *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994 (9th Cir. 200 7).

Defendants' argument both assumes that every consumer has only one toy and that every "consumer" is a real, live person.   Instead of offering the 3 concrete evidence 4 required by *Lowdermilk*, Defendants instead engage in precisely 3 the speculation and conjecture 4 rejected in that case.   As Defendants have observed, the recall extended to toys that were in the hands of either people or retailers, and that both people and retailers are included in the alleged class. (Def. Notice at p. 5 fn. 1).   That observation alone demonstrates that not all of the toys subject to the recall are owned by different people, and that some are not owned by people at all.   Thus, Mattel's own papers undermine its assertion of a $7,900,000 monitoring cost without Plaintiff even questioning the evidentiary basis of the declaration claiming the number of toys at issue. (*See* Def. Notice Ex.2, Aff. of Scott Penny at p.3,¶ 8).

Second, the Defendants seem to argue that that the Complaint's prayer for relief should also be included in assessing the aggregated amount in controversy for purposes of CAFA, once again they provide little evidentiary support for the assertion that those remedies will exceed CAFA's $5 million threshold.

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

1  Some instructive guidance is provided for these issues in the recently decided case of

2  *Guglielmino v. Mckee Foods Corp.*, 2007 WL 2916193 (9th Cir. 2007).

3      In *Guglielmino,* Chief Judge Vaughn Walker utilized three factors to find the amount in

4  controversy in that given case was in excess of $75,000: (1) accounting for economic damages

5  (2) attorney fees measured at 12.5% of economic damages and (3) punitive damages at a 1:1

6  ratio to economic damages.    *Id.* at p. 2**.**    As stated previously**,** in this case, the toys at issue

7  range in price from $5 to $40.    Assigning a conservative value of $25 to each of the 29,000

8  products Defendants have identified as subject to the recall and presume further that one toy

9  represents one person, a figure of $725,000 in economic damages may result.

10      Assuming the best case scenario for Plaintiffs, that dollar amount could conceivably apply

11  to the UCL section 17200 claims as restitution. *See Restatement Restitution*, section 1, comment

12  *e*, page 14, provides in part:    "In other situations, a benefit has been received by the defendant

13  but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but

14  nevertheless the enrichment of the defendant would be unjust.    In such cases, the defendant may

15  be under a duty to give to the plaintiff the amount by which he has been enriched.    Thus where

16  a person with knowledge of the facts wrongfully disposes of the property of another and makes a

17  profit thereby, he is accountable for the profit and not merely for the value of the property of the

18  other with which he wrongfully dealt . . . ."

19      The $750,000 could also be the independent measure of damages under the Commercial

20  Code section 2714 warranty claims.    Thus, tallying the $1,305,000 of medical costs as

21  consequential damages to the warranty claim plus the restitution and warranty economic relief of

22  $1,450,000, Plaintiff calculates a total possible probability of $2,755.000 in aggregate relief, an

23  amount far below the jurisdiction limits under CAFA.    Moreover, under the *Guglielmino*

24  standard the measure for attorney fees would only be about $344,000.    No punitive calculation

25  is required because the economic loss rule will bar punitive damages for breach of warranty,

26  *Robinson Helicopter Co. Inc. v. Dana Corp.* 34 Cal.4[th] 979 (2004), and no punitive damages are

27

28

6

available under UCL section 17200. *Cel Tech. Comm., Inc. v. L.A. Celluar Tel. Co.,* 20 Cal. 4th

163 (1999).    *See Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404-05 (9th Cir.1996)

(defendant failed to carry its burden to show the amount in controversy exceeded the

jurisdictional threshold despite plaintiff's suit for treble punitive damages under Cal. Civ.Code §

3345 because that code section did not allow for trebling of contract damages).    These facts

may be reviewed by the Court to ascertain the amount in controversy.    *See Abrego Abrego v.*

*Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir.2006).    Accordingly, it is evident that Defendant's

do not satisfy their burden regarding CAFA's aggregated jurisdictional limits because the

probable recovery in this matter amounts to $3.1 million.

III.

### MATTEL INC. WITH ITS PRINCIPAL PLACE OF BUSINESS IN EL SEGUNDO
### CALIFORNIA IS THE PRIMARY DEFENDANT IN THIS CASE

On October 10, 2005, Mattel announced the consolidation of its domestic Mattel Girls &

Boys Brands and Fisher-Price Brands divisions into one division.    The creation of the "Mattel

Brands" division, resulted in the consolidation of some management and support functions

designed to efficiently leverage Mattel's scale.    (*See* Mattel Inc. 10-K excerpt for fiscal year

ending December 31, 2006 attached as Ex. E Decl. of Julio J. Ramos.)

Defendants acknowledge that Mattel's principal place of business is California and that

most of the relevant acts and evidence underpinning its liability in this matter arose in its product

integrity division based at Mattel's offices in El Segundo, California.    (*See,* Defendants' Mattel,

Inc.'s and Fisher-Price Inc.'s Reply In Support of Motion For § 1407 Transfer of Actions To The

Central District of California attached as Ex. C to the Decl. of Julio J. Ramos.)    Furthermore,

Mattel's CEO and Chairman have clearly expressed that Mattel, rather than Fisher-Price, is the

responsible party in this case. "On behalf of Mattel and its nearly 30,000 employees, I apologize

sincerely."    (*See* Testimony of Robert A. Eckert Chairman and CEO of Mattel Inc. submitted to

7

1  the Senate Committee on Appropriations Subcommittee on Financial Services and General

2  Government dated 9/12/07 attached as Ex. B Decl. of Julio J. Ramos.)

3       According to CAFA's legislative history, a "primary defendant" is a "real" defendant

4  which is "a primary focus of the plaintiffs' claims–not just a peripheral defendant.    The

5  defendant must be a target from whom significant relief is sought by the class (as opposed to just

6  a subset of the class membership), as well as being a defendant whose alleged conduct forms a

7  significant basis for the claims asserted by the class." *Senate Report Class Action Fairness Act of*

8  *2005,* 109-14, 40 (2005).    Primary defendants "would be expected to incur most of the loss if

9  liability is found," and the term "should include any person who has substantial exposure to

10 significant portions of the proposed class in the action..." *Id.* at 43.

11      It is Mattel, Inc., from whom significant relief is sought and whose alleged conduct forms

12 a significant basis for the claims.    As Mattel's director of business analysis, Scott Penny, attests

13 it is Mattel which directs the Sales, Marketing, and Finance Groups and senior management of

14 its subsidiaries, including Fisher-Price.    (*See* Def. Notice Ex.2, Aff. of Scott Penny at p.2, ¶ 4.)

15 Thus, even Mattel, Inc., believes that its conduct, and not any independent action on the part of

16 its wholly owned subsidiary, Fisher-Price, Inc., forms the primary basis for these claims. When

17 greater than two-thirds of the proposed class of plaintiffs "and the primary defendants, are

18 citizens of the State in which the action was originally filed," the case is subject to the mandatory

19 rejection under the home-state exception.    28 U.S.C. § 1332(d)(4)(B).    Here, Mattel is the

20 primary defendant, it has publicly acknowledged its role in this matter, by all indications

21 Fisher-Price is merely a brand.

22      It is not contested that more than two-thirds of the proposed plaintiffs in this case are

23 citizens of California.    The proposed class is defined as "all persons, sole proprietorships,

24 partnerships, corporations and other entities in the State of California who purchased toys from

25 any of the Defendants or their subsidiaries at any time during the period from January 1, 2003 to

26 the present (the 'Class Period')."    (Complaint, ¶ 34).

27

28

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

IV.

<u>CONCLUSION</u>

The Defendants have failed to sustain their burden by a preponderance of the evidence that this Class Action based solely on California consumer law against a California based primary defendant should be removed.    Therefore, Plaintiff respectfully requests that the Court remand this action back to San Francisco Superior Court and that attorney fees be granted in the event of remand.

Dated: November 5, 2007

Respectfully submitted,

By: <u>Julio J. Ramos</u>
Julio J. Ramos
Attorney at Law
35 Grove Street, Suite 107
San Francisco, California 94102
Telephone:    (415) 948-3015
Facsimile:    (415) 469-9787

Steven M. Nuñez
Law Offices of Steven M. Nuñez
3333 Camino Del Rio South, Suite 215
San Diego, CA 92108
Telephone:    (619) 296-8400
Facsimile:    (619) 296-3700

Attorneys for Plaintiff

9

PLAINTIFF AMY HARRINGTON'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO REMAND

1
2
3
4
5
6
7
8
9
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28