# EXHIBIT C



RECEIVED
CLERK'S OFFICE

2007 OCT 16  P 3:50

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re Mattel Inc. Toy Lead Paint Products   §              MDL Docket No. 1897
Liability Litigation                        §

DEFENDANTS MATTEL, INC.'S AND FISHER-PRICE INC.'S REPLY
IN SUPPORT OF MOTION FOR § 1407 TRANSFER OF ACTIONS
TO THE CENTRAL DISTRICT OF CALIFORNIA

Defendants Mattel, Inc. ("Mattel") and Fisher-Price, Inc. ("Fisher-Price") (collectively, "Defendants") demonstrated in their Motion for § 1407 Transfer of Actions to the Central District of California that the lawsuits filed against them in various federal district courts have a decidedly California tilt. That tilt is even more pronounced today. Currently, there are fifteen putative class actions pending in federal district courts asserting claims against Mattel, Fisher-Price and/or other affiliated entities, and eight of those actions are already pending in the Central District of California. Six of the eight Central District of California cases have now been assigned as related cases to the docket of the Honorable Dale S. Fischer, where the first-filed of all the cases (*Mayhew*) is pending. One of the other non-Central District federal cases is pending in the Northern District of California. Only six of the fifteen cases are pending outside California.

The Central District of California is not only the predominate location for the existing litigation, but remains the most logical forum for coordination. Mattel is headquartered there, and initial indications are that the bulk of witnesses and documents will be located either at Mattel's headquarters or in China. The relative convenience of Los Angeles over New York or South Carolina for any discovery related to China is obvious. The Central District of California is more convenient, however, even without considering documents or witnesses in China. While the recent recalls related to lead paint involve both Mattel and Fisher-Price toy brands, a much greater number of witnesses and documents are expected to be at Mattel's headquarters in the Central District of California, rather than at Fisher-Price's operations in the Western District of New York. Mattel and Fisher-Price urge the Panel to coordinate these actions, transfer them to the Central District of California, and assign them to the Honorable Dale S. Fischer.

**The Parties' Positions on Coordination and Selection of a Transferee Court**

On September 5, 2007, Defendants moved for coordination of these actions in the Central District of California and assignment to Judge Fischer. Subsequently, plaintiffs in the *Puerzer*, *Sarjent*, and *Shah* actions filed a Joint Motion that also sought coordination in the Central District of California. Because the *Puerzer* Joint Motion identified actions filed after Defendants' Motion, it was treated as a separate motion. In total, Plaintiffs in nine of the pending federal cases have filed papers (motion or response) before this Panel, eight of those nine support MDL coordination in some location, and six of those nine actions support transfer to the Central District of California.[1]

Plaintiff in one of the two Pennsylvania actions (*Monroe*) opposes inclusion of her action in an MDL-coordinated proceeding because hers is a Pennsylvania-only class, although she

---

[1] Plaintiffs in the *Puerzer*, *Sarjent*, *Shah*, *Mayhew*, *White* and *Luttenberger* actions have filed papers in support of coordination in the Central District of California.

cannot dispute that her claims are related to and would be encompassed by the multiple putative nationwide classes proposed by other plaintiffs. Plaintiffs in the two Southern District of New York cases (*Shourky* and *Goldman*) both support coordination in that district, but concede that the Central District of California is "appropriate and capable." Joint Memorandum of Plaintiffs Farrah Shoukry and Seth Goldman, at 1. Finally, plaintiff in the South Carolina action (*Hughey*) also acknowledges that coordination of these proceedings is proper, but proposes that the actions be assigned to the District of South Carolina, even though no party or known witness other than the plaintiff in that single case has any connection whatsoever to South Carolina.[2]

Plaintiffs in the recently-removed *Healy*, *Harrington*, and *Powell* actions, in *Rusterholtz* in the Central District of California, and in the second Pennsylvania federal action, *Chow*, apparently have not taken any position yet before the Panel.

## Argument

### I. Coordination of These Related Proceedings In a Single Forum Is Proper

The merit of coordinating these multiple, overlapping class actions under 28 U.S.C. § 1407 has been recognized by all but one plaintiff. Without question, because of the substantial duplication in classes, claims and relief sought, transfer will promote the just and efficient conduct of these cases and serve the convenience of parties and witnesses.

The only party to oppose coordination is the plaintiff in *Monroe v. Mattel, Inc.*, pending in the Eastern District of Pennsylvania. In *Monroe*, the plaintiff seeks certification of a state-wide class of children under the age of six who have had contact with any of the recalled toys

---

[2] In a separate filing made in the District of South Carolina Court on October 12, 2007, plaintiff in the *Hughey* action maintained his preference for transfer to the District of South Carolina, but indicated that he would not oppose transfer to the Southern District of New York.

and requests the establishment of a court-supervised medical monitoring program. Plaintiff's arguments opposing coordination of her case with the others are without merit.

First, plaintiff in *Monroe* argues that there is not sufficient overlap between her claims and the others seeking certification of a nationwide class. That is simply not the case. By definition, *Monroe*'s proposed statewide class is subsumed in every one of the ten federal court actions that seek certification of a nationwide class based on the recalls related to lead paint. At least nine of those nationwide classes seek some form of medical monitoring. Moreover, the proposed class in *Monroe* is completely subsumed by the other Pennsylvania action, *Chow v. Mattel, Inc.*, which seeks certification of a class of Pennsylvania children under the age of thirteen who have had contact with any of the recalled toys and also seeks a medical monitoring program.[3]

The central thrust of the *Monroe* opposition appears to be the belief that "Pennsylvania's well-developed body of case law regarding medical monitoring in the absence of a present injury ... carves a clear path to relief for the proposed Pennsylvania class of children ...." Monroe Memorandum in Opposition at 3-4.[4] Regardless of plaintiff's views as to whether liability has been "established in the very public forum of the mass media," Monroe Memorandum in Opposition at 4, the reality is that liability will have to be established in a legal forum. It is clear that under Pennsylvania law, should it be applicable, to recover for medical monitoring, a plaintiff must show, among other things, exposure to a hazardous substance

---

[3] Plaintiff in *Monroe* cites a number of cases for the proposition that "[w]here a minimal number of actions are under consideration for transfer under 28 U.S.C. § 1407, the movant bears a strong burden ...." Monroe Memorandum in Opposition at 3. In each of those cases, however, there were only two related cases, and in at least two of them, substantial discovery had already occurred before the transfer motions were filed.

[4] Plaintiff cites *In re Dow Co. "Sarabond Products" Liability Litig.*, 664 F. Supp. 1403 (D. Colo. 1987) for the proposition that potential conflicting state laws is a basis for denying coordination. To the contrary, *Dow* was a coordinated MDL proceeding. The issue addressed in the opinion cited by plaintiff was whether a particular piece of an MDL proceeding should be carved out and transferred under § 1404(a) for separate trial. That is not relevant here.

"caused by the defendant's negligence" proximately causing a significantly increased risk of contracting a serious latent disease. *Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137, 145-46 (Pa. 1997). Defendants do not concede those issues, and the discovery necessary to address those claims will be duplicative of discovery required for the other medical monitoring claims and the non-medical monitoring claims in the other cases.

In every action proposed for MDL coordination, a party always can argue that coordination of multiple cases will slow down that single action; however, the benefits of coordinating discovery and conserving judicial resources balance out the potential for slight delay. Those benefits of coordination, along with the dangers and burdens of duplication inherent in these actions against Mattel and Fisher-Price, compel coordination of all actions subject to Defendants' Motioon, including the *Monroe* action.

## II. The Central District of California Is the Appropriate Forum for Coordination

Plaintiffs in three actions support coordination under § 1407, but oppose transfer to the Central District of California. They offer no compelling justification, however, for an assignment to any other district. Defendants and plaintiffs in six of the actions agree that the Central District of California is most appropriate, and three of the actions for which no MDL papers have been filed are already pending in the Central District of California. The first-filed action is in the Central District of California, and five of the cases have already been transferred to the Honorable Dale S. Fischer as related cases.

Nonetheless, plaintiffs in the *Hughey* action, filed in the District of South Carolina, argue that the MDL proceedings should be assigned to that court. There is no basis for such an assignment. Other than the *Hughey* plaintiffs, no party or witness has been identified with any connection to South Carolina. It is not centrally located or easily accessible, especially with respect to the evidence or witnesses in China. The only justification offered by the *Hughey*

plaintiffs for selection of the South Carolina forum is the presumption that it can be moved to resolution more quickly there than in the Central District of California. Even if that presumption were supported, which it was not, that single factor does not justify the inconvenience and burden on the witnesses and the plaintiffs in the other 14 cases. The *Hughey* plaintiffs themselves seem to acknowledge as much in their papers filed in the District of South Carolina related to this MDL proceeding, where they indicate that they would not oppose coordination outside South Carolina.

Plaintiffs in *Shoukry* and *Goldman*, on the other hand, request coordination in the Southern District of New York, where their actions are pending. Transfer to New York is also not justified here. First, although it is factually accurate to say there are two cases currently pending in the Southern District of New York, it is important to note that both cases are brought by the same plaintiffs' counsel, both cases are brought by a plaintiff from Florida, both cases seek certification of precisely the same class of plaintiffs and precisely the same class of defendants, and both cases assert precisely the same claims and in virtually the same words. Rather than add Goldman as an additional plaintiff to their existing *Shoukry* action, however, plaintiffs' counsel instead elected to file a completely duplicative action. This transparent attempt to create some impetus for MDL transfer to the Southern District of New York should be recognized for exactly what it is.

Moreover, the premise of the *Shoukry* plaintiffs' argument that New York is just as convenient as Los Angeles is simply incorrect. As noted above, the bulk of Defendants' witnesses and documents will be in California or in China. Mattel's worldwide product integrity program is likely to be relevant to the various claims in these proceedings, and that program is based at Mattel's offices in El Segundo, California. Far fewer documents and witnesses are

located at Fisher-Price's headquarters in the Western District of New York. Nor does the fact one plaintiff in the RC2 MDL proceedings has requested transfer to the Southern District of New York have any bearing on the Panel's decision here, as there is no basis for joining the actions against these entirely separate groups of defendants.[5]

The Central District of California is by far the most convenient forum for witnesses, parties and counsel, especially with respect to events in China. Even the *Shoukry* plaintiffs concede that the Central District of California is an "appropriate and capable venue to administer this action." Joint Memorandum of Plaintiffs Farrah Shoukry and Seth Goldman, at 1. Because it is, in fact, appropriate and capable, these actions should be coordinated and transferred there. Moreover, they should be transferred to the Honorable Dale S. Fischer, before whom the first-filed and five other cases are already pending.

## Conclusion

The fifteen actions currently pending in federal court relating to Defendants' August and September 2007 recalls substantially overlap in the classes they seek to certify and the relief they seek. Virtually all parties agree that coordination under § 1407 is proper. The Central District of California is supported as the best forum for coordination by Defendants and plaintiffs in six of the pending actions, and for good reason. Defendants respectfully request, therefore, that these actions and any potential tag-along actions be coordinated, transferred to the Central District of California, and assigned to the Honorable Dale S. Fischer.

---

[5] While one plaintiff has apparently sought transfer of the RC2 litigation to the Southern District of New York, based on the papers submitted by the *Shoukry* plaintiffs, it appears that RC2 seeks transfer to Illinois and other groups of plaintiffs seek transfer to the Central District of California. Intermingling the RC2 and Mattel/Fisher-Price litigation would be inappropriate for a variety of reasons, not the least of which is the fact that there is not likely to be any overlap in fact discovery among the defendants, thereby eliminating a significant benefit to coordination.

Dated: October 16, 2007

Respectfully submitted,

_____
Hugh Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: hrwhiting@jonesday.com

Thomas E. Fennell
Michael L. Rice
JONES DAY
2727 N. Harwood St.
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Emails: tefennell@jonesday.com
        mlrice@jonesday.com

Attorneys for Defendants Mattel, Inc.,
Fisher-Price, Inc., and Target Corporation