1    Elwood Lui (SBN 45538)
elui@jonesday.com
2    Thomas A. Rector (SBN 199175)
tarector@jonesday.com
3    JONES DAY
555 California Street, 26th Floor
4    San Francisco, CA 94104
Telephone: (415) 626-3939
5    Facsimile: (415) 875-5700

6    Hugh Whiting
hrwhiting@jonesday.com
7    (pro hac vice application to be filed)
JONES DAY
8    717 Texas, Suite 3300
Houston, TX 77002
9    Telephone: (832) 239-3939
Facsimile: (832) 239-3600

10

11    Thomas E. Fennell
tefennell@jonesday.com
(pro hac vice application to be filed)
12    Michael L. Rice
mlrice@jonesday.com
13    (pro hac vice application to be filed)
JONES DAY
14    2727 N. Harwood St.
Dallas, TX 75201
15    Telephone: (214) 220-3939
Facsimile: (214) 969-5100

16

17    Attorneys for Defendants
MATTEL, INC. AND FISHER-PRICE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMY HARRINGTON, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>  v.<br><br>MATTEL, INC. a Delaware Corp., and FISHER-PRICE INC. a Delaware Corp., and DOES 1 through 100, inclusive,<br><br>               Defendants. | Case No. 07-05110 (MJJ)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date: December 11, 2007<br>Time: 9:30 a.m.<br>Dept.: Courtroom 11 |

MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendants Mattel, Inc. ("Mattel") and Fisher-Price Inc. ("Fisher-Price") (collectively, "Defendants") submit the following Memorandum of Points and Authorities in Opposition to Plaintiff Amy Harrington's ("Plaintiff") Motion to Remand.

I.  INTRODUCTION

This action was filed on August 20, 2007. It is one of eighteen duplicative and overlapping class actions currently pending in federal district courts which were all filed following voluntary toy recalls announced by Defendants on August 2, August 14, September 4, and October 25, 2007. This case is one of only four of these overlapping class actions originally filed in state courts. Defendants have removed each of these four cases; this is the only case in which a remand motion has been filed. All of these eighteen cases – including this action – make similar claims, seek fundamentally the same remedies, and purport to be filed on behalf of overlapping putative classes of purchasers and users of recalled toys.

These actions focus primarily on toys, made by contract manufacturers in China, that were recalled because surface paint on portions of the toys potentially contained levels of lead in excess of applicable standards due to application of noncompliant paint. Defendants believe that this litigation can be most effectively and efficiently resolved if all of the cases are coordinated in one proceeding with one schedule. Therefore, in accordance with the provisions of 28 U.S.C. § 1407, on September 5, 2007, Defendants filed a motion with the Judicial Panel on Multidistrict Litigation (the "JMPL") seeking to have all of the cases coordinated for pretrial in one proceeding in the United States District Court for the Central District of California, where the first of the cases was filed. The JMPL has set the motion to transfer for hearing on November 29, 2007. As the JPML has recognized, the potential for conflicting or overlapping class actions "presents one of the strongest reasons" for transfer under 28 U.S.C. § 1407(a). *In re Plumbing Fixtures*, 308 F. Supp. 242, 243-244 (J.P.M.L. 1970). Indeed, transfer is favored to ensure consistency of rulings, especially with respect to class certification matters. As the Multidistrict Litigation Manual notes, "[t]he management of the litigation would become exceedingly difficult if similar actions

1  involving overlapping classes were proceeding in different districts." Multidistrict Litigation
2  Manual at § 5.24 (2007).  In accord with applicable JPML procedures, on October 9, 2007,
3  Defendants submitted notice to the JPML of this case as a potential tag-along action.
4       Plaintiff in this action served Defendants with the complaint and summons on
5  September 11, 2007.  Defendants timely removed this case on October 4, 2007 pursuant to the
6  Class Action Fairness Act of 2005, ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332(d)
7  and 1453.  On November 5, 2007, Plaintiff filed a Motion to Remand ("Motion").  The Motion is
8  based on only two grounds: (1) Plaintiff contends Defendants have not proved by a
9  preponderance of evidence that the amount in controversy exceeds the $ 5 million CAFA
10  jurisdictional threshold; and (2) that the case is subject to remand based upon the home-state
11  controversy exception of 28 U.S.C. § 1332(d)(4)(B).  Plaintiff does not set forth any other basis
12  for remand.
13       Plaintiff's Motion should be denied.  Defendants have met the preponderance of evidence
14  standard at issue by establishing that it is "more likely than not" that the amount in controversy
15  put at issue by Plaintiff's Complaint exceeds $ 5 million.  In addition, Plaintiff fails to establish
16  that the 28 U.S.C. § 1332(d)(4)(B) home-state controversy exception is applicable here.

17  II.     AMOUNT IN CONTROVERSY
18       Under CAFA, the controlling question for purposes of evaluating the amount in
19  controversy requirement is whether the aggregate amount of damages and other relief sought for
20  the alleged class exceeds $ 5 million.  To avoid CAFA jurisdiction, a plaintiff must expressly
21  allege that the aggregate relief sought in the complaint is less than $ 5 million.  Plaintiff does not
22  make any such allegation in her Complaint.  Thus, nowhere in the Complaint does Plaintiff limit
23  the aggregate amount of damages and other relief sought on behalf of the putative class or allege
24  the total aggregate amount in controversy is less than $ 5 million.  Because Plaintiff seeks
25  unspecified damages and a broad range of relief on behalf of the putative class, to meet the CAFA
26  amount in controversy standard, Defendants need only show by a "preponderance of the
27  evidence" that $ 5 million is put at issue.  *Guglielmino v. McKee Foods Corp.*, 2007 U.S. App.
28  LEXIS 23654, at *14 (9th Cir. October 9, 2007).  Defendants need only "produce underlying

1   facts showing only that it is *more likely than not* that the amount in controversy exceeds
2   $ 5,000,0000, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot*
3   *Travel Centers LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (slip copy) (emphasis in
4   original); *see also Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp. 2d 1205, 1208 (C.D. Cal.
5   2006). "Said burden is not daunting, as courts recognize that under this standard, a removing
6   defendant is *not* obligated to research, state, and prove the plaintiff's claims for damages."
7   *Muniz*, 2007 WL 1302504, at *2 (emphasis in original) (quotation and citation omitted).
8        In her Complaint, Plaintiff alleges a class definition including all consumers and
9   retail/commercial purchasers in California that purchased a toy subject to the August 2, 2007
10  recall (Complaint, ¶34). In the Notice of Removal, Defendants focused on one component of the
11  alleged class. The affidavit of Mattel's Director of Business Analysis provides evidence that
12  approximately 29,900 products subject to the August 2, 2007 recall were sold to consumers in
13  California. *See* Affidavit of Scott Penny, attached as Ex. 2 to Defendants' Notice of Removal.
14  Plaintiff does not challenge this evidence.
15       Focusing on the consumer component of the alleged class, the question then is what is the
16  amount in controversy put at issue by Plaintiff's Complaint. Plaintiff claims that as a result of
17  Defendants' conduct, members of the putative class have been exposed to "a hazardous
18  substance" and "are at an increased risk of being poisoned by lead", and demands as only part of
19  the relief sought that Defendants pay for both medical testing and future medical monitoring.
20  (Complaint ¶¶ 21; 22; 32; 52; 58). While Defendants deny Plaintiff's claims, the "ultimate
21  inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant
22  will actually owe." *Muniz*, 2007 WL 1302504, at *3; *Levine v. Bic USA, Inc.*, 2007 WL 2406897,
23  at *2 (S.D. Cal. Aug. 20, 2007). Thus, accepting Plaintiff's allegations as true for purposes of
24  determining the amount in controversy only, the potential costs associated with Plaintiff's
25  demand for putative class-wide medical testing and monitoring are properly included in the
26  assessment of the aggregate amount in controversy. *See Guglielmino*, 2007 U.S. App. LEXIS
27  23654, at *13-14; *see also Katz v. Warner-Lambert Co.*, 9 F. Supp.2d 363, 364-365 (S.D.N.Y.)
28

(when putative class asserts claim for medical monitoring and research fund, amount in controversy measured by cost to defendant of creating monitoring program and/or research fund).

Plaintiff's claims for medical testing and medical monitoring relief put at issue two separate components: 1) medical testing for detection of lead poisoning (Complaint, ¶¶ 21; 22; 32); and 2) subsequent, future, medical monitoring (Complaint, ¶¶ 52; 58).  But Plaintiff fails to specify or define either component of this relief she seeks.  Nor does Plaintiff anywhere limit her claims for testing or for future monitoring.  Plaintiff contends that the class has been exposed to a risk of "being poisoned by lead," and presumably Plaintiff will ultimately base her claims for testing and medical relief on published materials relating to testing and monitoring for lead exposure.  In that connection, the Center for Disease Control ("CDC") recommends conducting at least two different blood lead level tests ("BLL tests").  CDC "*Interpreting and Managing Blood Lead Levels <10µg/dL in Children and Reducing Childhood Exposures to Lead*" Report; Nov. 2, 2007/56(RR08) 1-14;16 ("CDC Nov. 2, 2007 Report"), pg. 9 ("Because lead exposures might change with a child's developmental progress . . . two routine screenings are recommended."), attached as Ex. 1 to Rector Reply Declaration.  But blood lead level tests are only one part of the evaluation.  Clinical evaluation is another recommendation of the CDC.  *Id.* at 10.  Plaintiff's Complaint allegations put this relief at issue – multiple blood lead tests for each child and a physician's clinical evaluation of these tests and the child's condition, environment, and developmental status.  *See also* American Academy of Pediatrics Policy Statement, *Lead Exposure in Children: Prevention, Detection, and Management*, Pediatrics Vol. 116 No. 4 October 2005, attached as Ex. 2 to Rector Reply Declaration.  As indicated, Defendants deny that any such relief is – or will be – justified here.  But that is not the standard for CAFA jurisdiction.

Plaintiff could have "alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought." *Muniz*, 2007 WL 1302504, at *4 (citation omitted).  Plaintiff did not do that and she does not deny that the costs associated with the medical testing and subsequent medical monitoring are above $ 5 million.[1]  Instead, Plaintiff merely claims

---

[1] Plaintiff cites to a 2002 study analyzing direct taxpayer costs for Medicaid programs in Ohio to suggest the average cost is $ 45 per child.  However, the study is inapplicable for several reasons.  The study is based on 2002 costs to taxpayers in Ohio rather than the 2007 costs to Defendants in

1  Defendants have not shown sufficient support of the costs associated with her medical testing and
2  medical monitoring demands. However, Defendants are "*not* obligated to research, state, and
3  prove the plaintiff's claims for damages." *Muniz*, 2007 WL 1302504, at *2 (citation and
4  quotation omitted) (emphasis in original).

5  Defendants have provided evidence as to the size of the putative consumer component of
6  the alleged class and shown that Plaintiff demands that Defendants pay for multiple BLL tests and
7  related medical examinations for at least the consumers. Based on inquiries to six blood testing
8  facilities in the State of California, Defendants estimate that the cost of a single BLL test is more
9  than $ 60. *See* Meyers Declaration. Thus, assuming that the relief here is no more than two BLL
10 tests and a single clinical evaluation, it is likely the costs per child would exceed $ 200. Given
11 the size of the putative class and potential medical testing and medical monitoring costs in excess
12 of $ 200 per putative class member, it is *more likely than not* that the amount in controversy
13 exceeds $ 5 million on just these costs alone. *See Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL
14 1345706 at *2 (E.D. Cal. May 8, 2007) (slip copy) (utilizing reasonable assumptions in
15 concluding defendants established amount in controversy; also noting that when plaintiff's
16 argument "is so contrary to common understanding . . . [plaintiff] was under some obligation to
17 do more than hypothesize unlikely possibilities."); *see also Davis v. Chase Bank U.S.A.*, 453 F.
18 Supp. 2d 1205, 1208 (C.D. Cal. 2006) (finding removal proper; "[plaintiff] provides no evidence
19 that [defendants'] calculations are incorrect, and given the allegations, this amount seems a
20 reasonable estimate."); *Robinson v. Cheetah Transp.*, 2006 U.S. Dist. LEXIS 10129, at *8-9
21 (W.D. La. Feb. 24, 2006) (holding amount in controversy met by using estimates of class size and
22 categories of damages alleged because Court "cannot ignore the plain facts of a case and the
23 inferences that follow therefrom."). Even if the court is uncertain whether the threshold is met,

---

(continued…)

California. More significantly, 2,498 of the 2,777 children in the study had a single blood lead test rather than the multiple blood tests and medical examinations recommended by the CDC. In fact, the study acknowledged that this same category of children, approximately 90% of the study, "may have medical costs related to their lead exposure that are not included in the analyses reported here." Thus, Plaintiff's $ 45 average cost figure is simply wrong.

1  "[t]he district court should interpret expansively its power to aggregate individual class members
2  claims, and where the court is in doubt whether the aggregated claims exceed $ 5 million, the
3  court should err in favor of exercising jurisdiction over the case." *Romeo v. The Home Depot*
4  *U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 79881, at * 4-5 (S.D. Cal. Oct. 30, 2006) (quoting from S.
5  Rep. No. 109-14, at 42 (2005), as reprinted in 2005 U.S.C.C.A.N 3, 41).

6  Though the potential cost associated with Plaintiff's medical testing and medical
7  monitoring demands meet the threshold CAFA amount in controversy on their own, *all* of
8  Plaintiff's requested relief must be included in assessing the aggregated CAFA amount in
9  controversy. *Guglielmino*, 2007 U.S. App. LEXIS 23654, *13-14 ("[a]lthough these allegations
10 seek payment of sums from [defendant], they do not fall comfortably within the realm of
11 'damages' and are not labeled as such in the Prayer for Relief. Nonetheless, because recovery of
12 these sums would entail a payment by [defendant], we are convinced that they must be included
13 within any amount-in-controversy calculation."). Thus, even Plaintiff estimates $ 1.45 million[2]
14 for restitution and warranty economic relief (Motion to Remand, pg. 6). But, the costs associated
15 with Plaintiff's request for injunctive relief and attorney's fees must also be totaled in assessing
16 the CAFA amount in controversy. Assuming the truth of the allegations in Plaintiff's Complaint
17 and totaling all the costs Plaintiff seeks to impose on Defendants, Defendants have met their
18 burden by showing that it is more likely than not that the amount in controversy exceeds $ 5
19 million.

20 III.   CAFA EXCEPTION TO JURISDICTION IS INAPPLICABLE

21 Plaintiff fails to meet her burden of proving that the 28 U.S.C. § 1332(d)(4)(B) exception
22 to CAFA ("home-state controversy exception"), requiring that federal courts decline jurisdiction
23 if two-thirds or more of the members of the putative class and the "primary defendants" are
24 citizens of the original forum state, is applicable. Based upon the structure of CAFA and "the

---

[2] Note that Plaintiff made this assumption based upon a calculation of $ 25 per toy multiplied by 29,000 products subject to the August 2, 2007 recall that were sold to consumers in California. However, Plaintiff's proposed class definition, consisting of not just consumers but any entity that purchased a toy in California subject to the recall, is substantially larger and thus the $ 1.45 million estimate is substantially lower than the amount that could be considered for purposes of determining the amount in controversy.

1  long standing rule on proof of exceptions to removal[,]" the Ninth Circuit has explicitly stated

2  "that the party seeking remand bears the burden of proof as to any exception under CAFA."

3  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007). Plaintiff provides no

4  evidence that either prong of the exception is satisfied.

5      To begin with, the home-state exception is inapplicable because Fisher-Price, a Delaware

6  corporation with its principal place of business in New York, is not a California citizen. Plaintiff

7  does not assert that Fisher-Price is a California citizen. Instead, Plaintiff merely claims that

8  Fisher-Price is not a "primary defendant." Though the term "primary defendants" is not defined

9  in CAFA, *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614, * (C.D. Cal. Nov. 21, 2005),

10 the Report of the Senate Judiciary Committee explained that the "Committee intends that

11 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the

12 lawsuit - i.e., the defendants that would be expected to incur most of the loss if liability is found.

13 Thus, the term 'primary defendants' should include any person who has substantial exposure to

14 significant portions of the proposed class in the action, particularly any defendant that is allegedly

15 liable to the vast majority of the members of the proposed classes (as opposed to simply a few

16 individual class members)." S. Rep. No. 109-14, at 43, as reprinted in 2005 U.S.C.C.A.N. at 41.

17     Based on the allegations in Plaintiff's Complaint, involving only Fisher-Price toys

18 (Complaint, ¶¶ 8; 9; 21; 23-25; 27; 30; 57-58), Plaintiff asserts claims and alleges direct liability

19 against both Fisher-Price and Mattel. Further, Plaintiff's unsupported assertion that Mattel is the

20 primary defendant solely because Fisher-Price is a wholly-owned subsidiary fails to meet

21 Plaintiff's burden of proof as to both the home-state controversy exception and fundamental

22 elements of corporate law. *See Scottsdale Ins. Co. v. Homestead Land Dev. Corp.*, 1992 U.S.

23 Dist. LEXIS 21915, at *17 ft. 8 (N.D. Cal. Oct. 20, 1992) (explaining, "courts consistently honor

24 the separation between a parent corporation and its subsidiary, and have treated such corporations

25 as separate legal entities with separate liabilities and assets. The separate corporate identity of

26 both parent and subsidiary corporations may be disregarded only to prevent fraud or injustice, not

27 to inflict an obligation on an innocent corporation.") (citations omitted); *see also Miller v. IBM*,

28 2006 U.S. Dist. LEXIS 73715 (N.D. Cal. Sept. 26, 2006) (granting defendant's motion for

summary judgment in part because plaintiff failed to present basis for holding parent corporation liable for its subsidiaries' conduct).

In addition, Plaintiff provides no evidence that two-thirds or more of the putative class are *citizens* of California. Plaintiff asserts she is a resident of California (Complaint, ¶ 8), and she seeks to represent a putative class consisting of "[a]ll persons . . . in the State of California who purchased toys . . ." (Complaint, ¶ 34). However, the home-state controversy exception is based on citizenship, not residency, and the averment of residency is not the same as asserting citizenship. *See Morin v. Abercrombie & Fitch Stores*, 2007 U.S. Dist. LEXIS 54583 S.D. Cal. July 27, 2007) ("it has long been settled that for the purposes of jurisdiction, residence and citizenship are wholly different things, and a mere averment of residence in a particular state is not an averment of citizenship of that state."); *see also Kanaan v. Freescale Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 11736, *6 (N.D. Cal. Feb. 5, 2007) (stating, "[c]itizenship is determined by one's 'state of domicile,' not his state of residence,"). As Plaintiff bears the burden of proving the home-state controversy exception, Plaintiff's failure to prove that two-thirds or more of the putative class are citizens of California is fatal to her invocation of the exception. *See Anthony v. Small Tube Mfg. Corp.*, 2007 U.S. Dist. LEXIS 73064, at *12 (E.D. Pa. Sept. 27, 2007) (holding plaintiff's failure to demonstrate citizenship of class is "sufficient to deny plaintiff's motion to remand" on home-state controversy exception).

IV. CONCLUSION

Based upon the aforementioned authority, Defendants respectfully request that the Court deny Plaintiff's Motion for Remand.

Dated: November 20, 2007

Respectfully submitted,
JONES DAY

By: /s/ Thomas A. Rector
    Thomas A. Rector

Attorney for Defendants
Mattel, Inc. and Fisher-Price, Inc.

## PROOF OF SERVICE (FOR NON-EFILERS)

**Amy Harrington, on behalf of herself and all others similarly situated v. Mattel, Inc., a Delaware Corp. and Fisher-Price Inc. a Delaware Corp. and Does 1-100,**

I, Margaret Landsborough, declare:

I am a citizen of the United States and employed in San Francisco, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, CA 94104.

On November 20, 2007, I caused to be served a copy of the within document(s):

MATTEL, INC. AND FISHER-PRICE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND and [PROPOSED] ORDER DENYING PLAINTIFF'S MOTION TO REMAND.

- ☐ by transmitting a true copy of the document(s) listed above via facsimile to the addresses and at the facsimile number(s) set forth below.

- ☒ by placing a true copy of the document(s) listed above in sealed envelope(s) for deposit with the U.S. Postal Service to the addresses set forth below.

I am readily familiar with the Firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

- ☐ by placing a true copy of the document(s) listed above in a sealed Federal Express envelope, and affixing a pre-paid air bill, and causing said envelope to be delivered to a Federal Express agent for delivery to the persons at the addresses set forth below.

Steven M. Nunez
Law Offices of Steven Nunez
3333 Camino Del Rio Suite 215
San Diego, CA 92108

Telephone: (619) 296-8400
Facsimile: (619) 296-3700

Attorneys for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 20, 2007, at San Francisco, California.

_____
Margaret Landsborough