JULIO J. RAMOS (SBN 189944)
Attorney at Law
35 Grove Street, Suite 107
San Francisco, California 94102
Telephone:    (415) 948-3015
Facsimile:    (415) 469-9787
ramosfortrustee@yahoo.com

STEVEN M. NUNEZ (SBN 185421) (pro hac vice admission pending)
Law Offices of Steven M. Nunez
3333 Camino Del Rio South, Suite 215
San Diego, CA 92108
Phone (619) 296-8400
Fax (619) 296-3700
snunez12@sbcglobal.net

Attorneys for Plaintiff
Amy Harrington

# UNITED STATES DISTRICT COURT

## NORTHER DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMY HARRINGTON, on behalf of herself and all others similarly situated, </br></br>Plaintiff,</br></br>vs.</br></br>MATTEL, INC., a Delaware Corp., and FISHER-PRICE, INC., a Delaware Corp., and DOES 1 through 100, inclusive,</br></br>Defendants. | CIV. NO. 07-5110 (MJJ)</br></br>**PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REMAND**</br></br>Date: December 11, 2007</br>Time: 9:30 a.m.</br>Dept.: Courtroom 11 |

I.

INTRODUCTION

Defendants' opposition to this remand motion principally relies upon the fact that similar complaints exist that are the subject of a separate motion with the Judicial Panel on Multidistrict Litigation, rather than presenting any admissible evidence to support its burdens

---

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

regarding the amount in controversy jurisdictional requirement or to refute Plaintiffs evidence that Mattel, Inc., is the "primary defendant: in this lawsuit.   Simply stated, the Defendants assertions regarding judicial economy is neither the standard by which to review this court's subject matter jurisdiction, nor factually correct.   The removal statutes supply the standard for review, which must be strictly construed against such removal with the burden of establishing such jurisdiction in the federal courts placed squarely on the defendants, and nothing in the Class Action Fairness Act (CAFA) creates a new presumption in favor of removal. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir.2006); *Rodgers v. Central Locating Service, Ltd.*, 412 F.Supp. 1171 (W.D. Wash. 2006); *Wilson v Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Harris v. Provident Life and Acc. Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994); *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3rd Cir. 1987); *Crazy Eddie, Inc. v. Cotter*, 666 F.Supp. 503, 508 (S.D.N.Y. 1987).

 Moreover, Plaintiff's claim is not the "sole holdout" in state court as California's Attorney General and the City Attorney of Los Angeles have brought a Proposition 65 action in Alameda Superior Court on behalf of the People of the State of California against Defendants and others for distributing lead tainted toys in California, an action that is not subject to removal under the Class Action Fairness Act. (Ex. A to Decl. of Julio J. Ramos, Complaint, *People of the State of California v. Mattel et. al. filed November 19, 2007)*.

 The People's case relates to common questions of law and fact, i.e. the production of toys in China with surface paints in excess of legal lead levels, to justify consolidation with this case, C.C.P. 1048 , coordination, C.C.P. 404 *et. seq.*, or common management, *Basurco v. 21st Century Insurance Co.* 108 Cal.App.4th 110, 121-122, 133 Cal.Rptr.2d 367.   For example, the People's case, as in this matter, alleges a cause of action under section 17200 of California's Unfair Competition Law for violations of the Health and Safety Code.   (Ex. A at ¶ 55-57, p. 10).

2

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND
AUTHORTIES IN SUPPORT OF REMAND

## II.

## DEFENDANTS' EVIDENCE SIMPLY FAILS TO SATISFY THE PREPONDERANCE OF THE EVIDENCE BURDEN

Defendants base their conclusion that the aggregate amount of damages and other relief sought exceeds $5,000,000, on dubious analysis. Defendants posit that "approximately 29,000 toys are in the hands of consumers for whom Plaintiff seeks the costs of medical monitoring," and then applies the medical monitoring cost of $250 to each of the 29,000 toys. (Notice of Removal, ¶ 13.) However, the calculated figures are not based on admissible evidence, but rather on conjecture and assumption. *See Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 9th Cir. 1996) ("[T]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount.").

Defendants provide the Declaration of Scott Penny as support that approximately 29,900 toys subject to the recall were sold to consumers in California. However, Mr. Penny's declaration itself establishes that he is not competent to provide such evidence. Although his declaration states that a significant amount of data is collected by Mattel, Inc., through point of sale data collected by retailers, the approximation that 29,000 recalled units were sold in California ultimately rests on a guess. Mr. Penny bases his approximation on the assumption that 50% of the toys sold by retailers were subject to the recall. (Penny Decl. ¶7.) However, Mr. Penny himself states that the 50% number is assumed because the inventory practices of the particular retailers whose data he analyzed is not known to Mattel. (Penny Decl. ¶7.) Mr. Penny's assumptions are nothing more than ill-based speculation.

Moreover, Defendants base their calculation of damages on the assumption that the 29,000 toys sold in California is a proxy for the size of the class of affected consumers. However, there is no basis to assume that each consumer who purchased a recalled toy from a retailer purchased only one.

3

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REMAND

Such an assumption is not reasonable as referenced in Defendant's purported supporting authority. *See Sanchez v. Wal-Mart Stores, Inc.* 2007 WL 1345706 at 2 (E.D. Cal. May 8, 2007) (slip copy) ("It is reasonable to assume that defendants' California stores sold their inventory of strollers to California consumers.") The bulk of recalled toys belong to the Dora the Explorer line, it is more likely to assume that individual consumers purchased multiple toys within that toy line. The common understanding of how toys are marketed and purchased by consumers is that a single consumer purchases and owns multiple products within the same character line. In fact, Plaintiff Harrington is alleged to have purchased several of the recalled toys in the same line. (Compl. ¶8.) Thus there is no reasonable basis for Defendants to state that the class size is approximately 29,000.

Finally, Defendants present no admissible evidence whatsoever for the costs associated with the medical monitoring that they posit would be warranted. Defendants state that the likely cost per child would exceed $200. However, in support Defendants present the hearsay declaration of their attorney as evidence of the cost for blood lead level tests, and absolutely nothing with regard to substantiating clinical evaluation they posit would also be necessary. (*See* Decl. of Mathew A. Meyers.) The Complaint seeks no relief regarding clinical evaluations. There is simply no excuse for Defendants' failure to present admissible evidence to support their calculations, especially in light of the fact that their calculations are a moving target, having now been lowered from $250 to $200 per person between the time of the Notice of Removal and their current opposition. (*See* Def. Opposition at. p. 6.)

Since nothing in the text or history of CAFA creates a new presumption in favor of removal jurisdiction or relieves a defendant of its burden of persuasion in that regard, Defendants' failure to present evidence to support its removal notice requires remand to San Francisco Superior Court. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir.2006); *Rodgers v. Central Locating Service, Ltd.*, 412 F.Supp. 1171 (W.D. Wash. 2006).

4

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

III.

# EVIDENCE THAT TWO THIRDS OF THE PUTATIVE CLASS ARE CITIZENS OF CALIFORNIA HAS BEEN PRESENTED BY DEFENDANTS THEMSELVES AND IS NOT SERIOUSLY IN CONTROVERSY

Clearly, more than two thirds of the proposed plaintiffs are citizens of California. The proposed class action is defined as "all persons, sole proprietorships, partnerships, corporations and other entities in the State of California who purchased toys from any of the Defendants or their subsidiaries at any time during the period from January 1, 2003 to the present (the 'Class Period')." (Complaint, ¶ 34.) Thus, the proposed class is defined as citizens of California. Moreover, Defendants' evidence established that virtually all sales of Mattel and its subsidiaries, including Fisher-Price, are made to retailers, which in turn, sell to consumers, and that more than 75% of all sales are made by five retailers. (Penny Decl. ¶¶2,3.) It is reasonable to infer that the retailers in California sold their inventory of recalled products to citizens of California, as is the case with Plaintiff Amy Harrington. *See Sanchez v. Wal-Mart Stores, Inc.* 2007 WL 1345706 at 2 (E.D. Cal. May 8, 2007) (slip copy) ("It is reasonable to assume that defendants' California stores sold their inventory of strollers to California consumers.")

IV.

# THE PRESENT CONTROVERSY PRESENTS THE PARADIGM FOR THE HOME STATE EXCEPTION

Plaintiff argues the home state exception based largely on admissions the Defendants themselves have proffered to the United States Senate, regulatory filings and in filings with the Judicial Panel on Multidistrict Litigation. Mattel cannot refute that it controlled and supervised the manufacture and marketing of the offending toys with Fisher-Price supplying only its name and reputation. This factual scenario demonstrates the paradigmatic situation for which the home-state exception to CAFA exists:

> (4) A district court *shall* decline to exercise jurisdiction under paragraph (2) -
> (A)(i) over a class action in which–
> . . .

5

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C §1332(d)(4) (emphasis added).   Although the term "primary defendants" is not, strictly speaking, defined within the statute, the statute, in fact, provides a sufficient, workable understanding of the statutory intent.

The various exceptions to CAFA each are largely dependent on two consistent actors: the citizenship of the proposed class and the citizenship of the "primary" defendants.   Thus, the courts are entrusted with discretion to reject jurisdiction when between one third and two thirds of the proposed class of plaintiffs "and the primary defendants are citizens of the State in which the action was originally filed."   28 U.S.C. §1332(d)(3).   When greater than two thirds of the proposed class of plaintiffs "and the primary defendants, are citizens of the State in which the action was originally filed," the case is subject to the mandatory rejection of the home-state exception.   28 U.S.C. § 1332(d)(4).   While no exception exists when less than two thirds of the proposed plaintiff class are citizens of the state in which the action is filed, there is another section that applies when that amount is greater than two thirds; the local controversy exception applies when, in addition to the plaintiffs, "at least 1 defendant is a defendant--(aa) from whom significant relief is sought by members of the plaintiff class;(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed." *Id.*   While the first exception and the home state exception both require all primary defendants to be citizens of the State in which the action is filed, with the difference between the two exceptions being, largely, the number of proposed plaintiffs, the home state exception and the local controversy exception both require two thirds of the proposed plaintiffs to be citizens of the State in which the action is filed, with the difference between the two exceptions appearing to be with regard to the defendants.

While the home state exception requires all primary defendants to be citizens of the State in which the action is filed, the local controversy requires only one defendant with specific characteristics to be a citizen of the State in which the action is filed.

6

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

Thus, it appears that although the term "primary defendant" is not used within the local controversy exception, the specific characteristics listed within that section provide a reasonable understanding of the term "primary defendant." That the definition of "primary defendant" is, in fact, contained within the local controversy exception is further supported by the legislative history of the act. According to the Senate report, a "primary defendant" is a "real" defendant which is "a primary focus of the plaintiffs' claims–not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class." (*S. Rep.* 109-14, 40 (2005).) Primary defendants "would be expected to incur most of the loss if liability is found," and the term "should include any person who has substantial exposure to significant portions of the proposed class in the action..." (*Id.* at 43.) For example, a local agent of an out-of-state insurance company would not be a primary defendant in a consumer fraud case against the insurer." (*Id.*)[1] It is Mattel, Inc., from whom significant relief is sought **and** whose alleged conduct forms a significant basis for the claims asserted.

As Mattel's director of business analysis, Scott Penny, attests, it is Mattel which directs the Sales, Marketing, and Finance Groups and senior management of its subsidiaries, including Fisher Price. (Penny Decl. ¶ 7.) In addition, Mr. Penny, a Mattel executive, demonstrates a detailed knowledge of the manufacturing process for the toys that are subject to the recall, including those sold under the Fisher-Price brand. (Penny Decl. ¶ 7.) Furthermore, "initial indications are that the bulk of witnesses and documents will be located either at Mattel's

---

[1] In *Hangarter v. Paul Revere Life Ins. Co.,* 2006 WL 213834, this Court found that the California State Insurance Commissioner was a primary defendant when the plaintiffs were seeking mandatory injunctive relief from the Commissioner. Although no damages were sought from the State, the court found that the Commissioner had substantial exposure to the whole class due to the mandamus relief sought. (Id. at *3.) The Court used the factors listed in the legislative history without reference to the factors listed in the local controversy exception.

**7**

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

1. headquarters or in China." (Def. Mattel, Inc.'s and Fisher-Price Inc.'s Reply in Support of Motion for § 1407 Transfer of Actions to the Central District of California, ("Mattel's Reply Brief", p. 2.)  "While the recent recalls related to lead paint involve both Mattel and Fisher-Price toy brands, a much greater number of witnesses and documents are expected to be at Mattel's headquarters in the Central District of California, rather than at Fisher-Price's operations in the Western District of New York."  (Mattel's Reply Brief, p. 2.)  "Mattel's worldwide product integrity program is likely to be relevant to the various claims in these proceedings, and that program is based at Mattel's offices in El Segundo, California."  (Mattel's Reply Brief, p. 6.)  Thus, it appears that even Mattel, Inc., believes that its conduct, and not any independent action on the part of its wholly owned subsidiary, Fisher-Price, Inc., forms a significant basis for the claims asserted herein.

V.

CONCLUSION

Defendants present no credible evidence to support their claim that the amount in controversy exceeds $5,000,000.   Moreover, Plaintiff has provided Mattel's own admissions, which demonstrates that the actions of Mattel alone form the basis for the claims, and, thus, Mattel alone is a primary defendant.   Therefore, Plaintiff respectfully requests that the court remand this action to San Francisco Superior Court for eventual consolidation, coordination or common management with the People's case filed in Alameda Superior Court on November 19, 2007.

PLAINTIFF AMY HARRINGTON'S REPLY MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF REMAND

Dated: November 27, 2007

Respectfully submitted,

By: JULIO J. RAMOS
JULIO J. RAMOS (SBN 189944)
Attorney at Law
35 Grove Street, Suite 107
San Francisco, California 94102
Telephone:    (415) 948-3015
Facsimile:    (415) 469-9787

STEVEN M. NUNEZ (SBN 185421)
Law Offices of Steven M. Nunez
3333 Camino Del Rio South, Suite 215
San Diego, CA 92108
Phone (619) 296-8400
Fax (619) 296-3700
Attorneys for Plaintiff
Amy Harrington